## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CIELO JEAN "CJ" GIBSON, CORA SKINNER, GALLIENNE NABILA, IRINA VORONINA, JAIME EDMONDSON LONGORIA, JANET GUZMAN, LAURIE FETTER JACOBS, LINA POSADA, STEPHANIE RAO, YODIT YEMANE a/k/a JODIE JOE, JESSICA HINTON a/k/a JESSA HINTON, KATARINA VAN DERHAM, MARIANA DAVALOS, RHIAN SUGDEN, TIFFANY GRAY a/k/a TIFFANY TOTH and PHOENIX FECHTER, | : C.A. No.<br><br>: **COMPLAINT**<br><br>: **(Jury Trial Demanded)** |
| Plaintiffs, | : |
| v. | : |
| CENTRAL PARK NJ LLC d/b/a MISTER EAST, | : |
| Defendant. | : |

Plaintiffs CIELO JEAN "CJ" GIBSON, CORA SKINNER, GALLIENNE NABILA, IRINA VORONINA, JAIME EDMONDSON LONGORIA, JANET GUZMAN, LAURIE FETTER JACOBS, LINA POSADA, STEPHANIE RAO, YODIT YEMANE a/k/a JODIE JOE, JESSICA HINTON a/k/a JESSA HINTON, KATARINA VAN DERHAM, MARIANA DAVALOS, RHIAN SUGDEN, TIFFANY GRAY a/k/a TIFFANY TOTH and PHOENIX FECHTER, (collectively, "Plaintiffs"), file this Complaint against CENTRAL PARK NJ LLC, d/b/a MISTER EAST ("Defendant") respectfully allege as follows:

### BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, MISTER EAST located at 2401 N Wood Ave, Roselle, New Jersey 07203 (**hereinafter referred to as the "Night Club" or "Mister East"**).

2.    As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the

Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

<strong><u>JURISDICTION & VENUE</u></strong>

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant Central Park NJ LLC, is a limited liability company formed under the laws of the state of New Jersey, with its principal place of business located at 2401 N Wood Ave, Roselle, New Jersey, 07203. Upon information and belief, Central Park NJ LLC operates Mister East, which is located at 2401 N Wood Ave, Roselle, New Jersey 07203.

8.      Venue is proper in the United States District Court for the District of New Jersey because Defendant's principal place of business is located in Roselle, New Jersey, (Union County).

9.      A significant portion of the alleged causes of action arose and accrued in Roselle, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Roselle, New Jersey.

<strong><u>PARTIES</u></strong>

***Plaintiffs***

10.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

2

11.     Plaintiff Cora Skinner ("Skinner") is a well-known professional model, and a resident of Travis County, Texas.

12.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

15.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Laurie Fetter Jacobs ("Jacobs") is a well-known professional model, and a resident of Westchester County, New York.

17.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

18.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

19.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

21.     Plaintiff Katarina Van Derham ("Derham") is a well-known professional model, and a resident of Los Angeles County, California.

22.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Columbia.

23.     Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of England.

24.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

25.     Plaintiff Phoenix Fechter ("Fechter") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

26.     Defendant, Central Park NJ, is a limited liability company formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, Central Park NJ LLC operated Mister East.

## FACTUAL ALLEGATIONS

27.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

28.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

29.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

30.     In the case of each Plaintiff, this apparent claim was false.

31.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

32.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

33.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

34.    Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

35.    Upon information and belief, Gibson is depicted in the photo in Exhibit "A" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Gibson was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

36.    Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.    Skinner is a model and actress. Her television show appearances include, The Tonight Show with Jay Leno, Rules of Engagement, QVC, Shark, Las Vegas "White Christmas", and CSI Miami.  She has modeled for name brands such as, Sketchers, Nordstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness to name a few.  She has even appeared on

music videos such as Def Leppard's "Nine Lives". She is also the cofounder for Araya Visors. She has 79,500 Instagram followers.[1]

38.     Upon information and belief, Skinner is depicted in the photo in Exhibit "B" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Skinner was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

39.     Skinner has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

41.     Upon information and belief, Nabila is depicted in the photo in Exhibit "C" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

42.     Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

43.     Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

44.     Upon information and belief, Voronina is depicted in the photo in Exhibit "D" to promote Mister East on its Instagram page. This Image was intentionally altered to make it appear that Voronina was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

45.     Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria was a participant in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of Playboy. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Ain't No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 3 children.

47.     Upon information and belief, Longoria is depicted in the photo in Exhibit "E" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Longoria was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

48.     Longoria has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

50.     Upon information and belief, Guzman is depicted in the photo in Exhibit "F" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Guzman was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

51.     Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.     Jacobs is an American model and actress. She was the Playmate of the Month in the May, 2003 issue of "Playboy." Other publications include, Maxim, FHM, Vanity Fair, Kohl's, Macy's, McDonalds, Sunglass hut, and Leg Avenue. Fetter was cast in the indie thriller "Hiters" and made a guest appearance on an episode of the hit TV series "CSI: Crime Scene Investigation." She won an Award for Excellence - Best Actress at the 2005 Japanese Adult Broadcasting Awards for "Playmate Profile," which was televised on the Japanese satellite TV broadcaster Sky PerfecTV! on their Playboy channel.  Twitter 41,000 Followers.

53.     Upon information and belief, Jacobs is depicted in the photo in Exhibit "G" to promote Mister East on its Instagram page. This Image was intentionally altered to make it appear that Jacobs was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

54.     Jacobs has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,120 YouTube subscribers, 17,300 Facebook

followers, and over 5,200 Twitter followers.

56.     Upon information and belief, Posada is depicted in the photo in Exhibit "H" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Posada was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

57.     Posada has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

59.     Upon information and belief, Rao is depicted in the photo in Exhibit "I" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

60.     Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.     Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long

association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

62.     Upon information and belief, Yemane is depicted in the photo in Exhibit "J" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Yemane was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

63.     Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over

3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

65.    Upon information and belief, Hinton is depicted in the photo in Exhibit "K" to promote Mister East on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

66.    Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67.    Derham is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

68.    Upon information and belief, Derham is depicted in the photo in Exhibit "L" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Derham was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

69.     Derham has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

70.     Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically over 500,000 Instagram, Twitter, and Facebook followers.

71.     Upon information and belief, Davalos is depicted in the photo in Exhibit "M" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

72.     Davalos has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

73.     Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Sugden has been involved

in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 978,000 Social Media Followers.

74.    Upon information and belief, Sugden is depicted in the photo in Exhibit "N" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Sugden was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

75.    Sugden has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

76.    Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

77.    Upon information and belief, Gray is depicted in the photo in Exhibit "O" to promote Mister East on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

78.    Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

14

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

79.     Fetcher is a long time model and actor in Los Angeles. She's guest starred on shows like New Girl and Ballers. Worked on movies with Adam Sandler and Fast and the Furious franchise. Featured in major music videos with Future, T.I, Migos and The Weeknd to name a few. Modeled for Fashion Nova, Leg Avenue and Forever 21. She has acted in car commercials, Verizon cell phone spots and Timbaland campaigns.  With hundreds of thousands of followers across multiple platforms, with over 210,000 followers on Instagram

80.     Upon information and belief, Fetcher is depicted in the photo in Exhibit "P" to promote Mister East on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Fechter was either an employee working at Mister East, that she endorsed Mister East, or that she was otherwise associated or affiliated with Mister East.

81.     Fetcher has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

82.     Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

83.     Defendantowns, operates, and controls Mister East's social media accounts, including its Facebook, Twitter, and Instagram accounts.

84.     Defendant used Mister East's Facebook, Twitter, and Instagram accounts to promote Mister East's , and to attract patrons.

85.     Defendant did this for their own commercial and financial benefit.

86.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential

clientele that each Plaintiff either worked at Mister East, endorsed Mister East, or was otherwise associated or affiliated with Mister East.

87.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Mister East to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

88.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Mister East, and at no point have any of the Plaintiffs ever endorsed Mister East or otherwise been affiliated or associated with Mister East.

89.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

90.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

91.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

92.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

93.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

94.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

95.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Mister East.

96.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

97.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Mister East.

98.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

99.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

100.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Mister East's website, Twitter, Facebook, or Instagram accounts.

101.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## **FIRST CAUSE OF ACTION**
### **(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

102.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

103.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

104.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

105.    Thus, this was done in furtherance of Defendant's commercial benefit.

106.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

107.    Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

108.    As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

109.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's

110.    establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

111.    Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

112.    Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

113.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

114.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

115.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

116.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

117.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful

use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

118.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

119.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

120.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

121.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

122.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and

market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

123. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

124. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

125. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

126. Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

127.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

128.    Defendant's wrongful conduct as described herein was willful.

129.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

130.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

131.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

132.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

133.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Misappropriation of Likeness)**

134.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

135.    Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

136.    Defendant's use of Plaintiffs' images and likenesses to advertise its business constitutes a use for commercial purposes.

137.    Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

138.    Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

139.    Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

140.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

141.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

<u>FOURTH CAUSE OF ACTION</u>
**(Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)**

142.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

143.    The aforesaid acts of Defendant's unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under N.J.S.A. 56:4-1.

144.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

145.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

146.    Defendant's wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

### FIFTH CAUSE OF ACTION
**(Negligence/Respondeat Superior)**

147.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

149.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

150.    Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

151.    Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that its promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

152.    Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

153.     Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendant breached its duty of care to Plaintiffs by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

154.     Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

155.     As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

156.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

157.     As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

158.     Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

159.     Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

160.     Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

161.     Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

162.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

163.    As such, Plaintiffs have been damaged in an amount to be determined

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)    For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Mister East's Night Club;

(c)    For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and N.J.S.A. 56:4-2;

(d)    For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and N.J.S.A. 56:4-2;

(e)    For such other and further relief as the Court may deem just and proper.

/s/ Gerald B. Baldino, III
Gerald B. Baldino, III, Esquire
Attorney I.D. No. 295012019
SACCHETTA & BALDINO
24 S. Broad Street
Woodbury, NJ 08096
P: (856) 845-4400
F: (856) 845-0400
gbaldino@sbattorney.com
*Attorney for Plaintiffs*

OF COUNSEL:
John V. Golaszewski, Esquire*
THE CASAS LAW FIRM, PC
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
T: 646-872-3178
F: 855-220-9626
john@talentrights.law

Dated: November 6, 2025

*Pro Hac Vice Application Forthcoming*